You're ready. You may begin. Thank you, Your Honor, and may it please the Court. Christopher James and I'm appearing for the appellants who are the plaintiffs in the case in the trial court. I think the best service I can provide today is to clarify things that are probably less than perfectly clarified in our briefs. And I'm going to start with a complaint, though. A simple case, actually, in terms of 1983 violations, occurs in a relatively long chronological context. The complaint is organized chronologically, and then it's organized grouped by titles like the reserves process, you know, and so forth. So it was trying to do an efficient job, and then the paragraphs incorporate, by reference, earlier paragraphs. Fairly conventional pleading as far as we're concerned, but it is long, no question about it, and a lot of it is pretty important. So what the case is really about are the difficulties that you have bringing the Constitution into an intersection of property process and new law. So February 25, 2010, Multnomah County commissioners are doing the first official act with the law that was passed in 2007 and says, you shall designate thousands of acres of property by either reserve designation, urban, or undesignated. So what they do on February 25th is they say, this property, the plaintiff's property, is rural reserve. Sixty days earlier, they'd passed an ordinance that said it was undesignated. And those decisions, those designations, if you will, are supposed to be driven by factors. At the February 25th hearing, two of the councilmen said that it was not being driven by factors, and said that was also the opinion of the legal counsel of the commission at that time. And in fact, it's our allegation, and we cite the actual language of the counselors and the actual circumstance at the time, it was not driven by factors. And after that, when the ordinance was finally submitted, the language of the original ordinance that said these are the facts changed to different facts. So it's not innocent, and it's very political, and I want to just point out a few things that are not clear from the way it's pled, because there's no emphasis or bolding in a complaint, and there's not in a brief either, really. Council, I'm going to interrupt you, because our time is short. Anyone who lives in Oregon, and I do, knows that the approach that has been taken in this state in terms of land management is a political thing, right? It's a policy choice that Oregon has made to set up these structures and these systems and metro and this whole thing. So why doesn't Burford abstention apply here? Because as a federal court, why are we going to get involved in the weeds of how a state manages its property? So this statute should have been actually submitted under the real land use process in Oregon, which has worked for 50 years. Land Use Board of Appeals, that's the trial court or the reviewing court for land use issues, and it's worked fine. But for whatever reason, the legislature in 2007 said we're not going to put it in LUBA. In LUBA, if you have an ex parte concern or a constitutional concern, you have a right to evidence, a right to have a trial, a right to cross-examine witnesses, because it is so essential to constitutional infractions to understand what's actually happening. But your answer begs my question, because you said the legislature made a choice to make a change. They made a choice, but they didn't provide any due process in the new law. They took a new law and said we're going to have a process of adjusting property rights, but we're not going to have a process like the land use process for when things go wrong. In LUBA, when things go wrong, they have a process for constitutional violations and a court that reviews it, and it's an informed, specialized court. In this court's decision, and I'll pronounce it Weineck, but the case in which the LUBA, actually the land use, the actual land use regime was asked to be put aside for a Burford abstention, this court declined to do that. And it had a much more rigorous due process already in place. In that case, the plaintiff said there were constitutional violations, the trial court said this is a Burford abstention, and the Ninth Circuit said no, you can't stop this because those are constitutional allegations. Even the due process of LUBA, it's not about land use issues, it's about the Constitution, and this is the venue for constitutional issues and claims. Well, can you, I'm sorry to interrupt you, but can you distinguish your case from fair assessment? Oh, definitely. Fair assessment had to do with, the actual holding of fair assessment was that a Burford abstention could possibly apply if, in deciding the case, you had to first decide there's a constitutional, an unconstitutional statute. And there's a lot of confusion, including the trial court, that is not at all what our case says. Our case, paragraphs 54 to 64, straightforward. At a hearing, five commission members, they change a vote from 5 to 0 to 3 to 2. They change it after the two of the members have said clearly, this won't work, and legal counsel has said it won't work. The reason they said that was they abandoned the factors. The statute's fine constitutionally at that point, but you have to follow it. So when you abandon the statutory requirements, you're violating the Constitution. And all of those arguments are about the application of Oregon law and whether Oregon law was followed, and the Oregon Court of Appeals got to review those questions and issue a decision. So I'm back to, why is this a realm that federal courts should jump into? Well, first of all, the Court of Appeals didn't decide the constitutional issues. We'd filed a federal case before it came to the Court of Appeals. We reserved the federal issues. The court had no comment in either of its opinions. Could you not have raised them? Pardon me? To the extent that you didn't raise arguments you're raising to us, could you not have raised them to the Oregon Court of Appeals? Well, it's very clear from the procedure that was set up, not the LUBA procedure, which would have processed constitutional issues. It's not set up to process those issues. We had already filed a federal case, and it was stayed at the defendant's request pending, not the Court of Appeals, but pending the actual process itself. I don't think you're answering my question. My question is, could you not have raised the constitutional issues you want us to decide in the state proceeding? We could have said there are issues, but we couldn't have examined, we couldn't have asked the tribunal or the counselors, for example, whether they were subject to ex parte communications. We couldn't develop any evidence, whereas LUBA has a complete procedure for developing evidence, and then that evidence has to be reduced to findings, written findings, for the review. There is no process like that in the reserve statutes, none whatsoever. I guess I'm also puzzled as to why the Oregon Court of Appeals review is inadequate here. And I think it was in Bakers 5-1 and 2, the Oregon Court of Appeals has already concluded that the land review process was not improperly political. And so by bringing this federal action, are you asking us to disagree with the Oregon Court of Appeals decisions? Because it looks like that might be what you're asking. Well, thank you, Your Honor. I was going to present exactly on that point, so I'll do it. The Court of Appeals rendered the Barker decision in 2014. Within 60 days, the legislature took that appeal and said, we will recast all of the designations in Washington County, period. No reference to factors, no reference to criteria. They literally were eviscerating their own statute. And they did that for Washington County. And then in 2017, in an intergovernmental agreement, Clackamas County, in a quid pro quo, a written quid pro quo, extracted a concession from LCDC, or pardon me, from Metro, that required that every city decide, not the factors and criteria, every city decide whether you can actually bring urban reserve into the urban growth boundary and other issues. It's expressly said that the Clackamas had to give up its right to challenge the urban designations. And in the Washington County thing, the political powers didn't even bother to wait for that. So by the time you come to 2017, and we have not filed this case, repled it yet, but by the time you come to 2017, two out of three counties are not even concerned with factors and criteria. And so the Court of Appeals, in 2014, it took 60 days for the legislature to say, we're throwing out your opinion as to all of Washington County. And then after that, there were just quid pro quo political agreements. And the problem with that is none of this has any way for constitutional review. Only the federal courts interpret the U.S. Constitution. The U.S. Constitution is the only place that has, you know, the amendments four and five, if you will. And so the protection of individual rights in this entire context has to occur in federal court. Well, counsel, to be clear, the district court did exercise jurisdiction over the facial constitutional challenges to the statutory scheme that you're claiming was unconstitutional. So to the extent you're claiming that the process afforded by statute by the Oregon legislature was inadequate, the district court did reach and address that claim on the merits, correct? So then the only thing that the district court abstained from was the as-applied claims, correct? Well, right. And facial claims cannot be—they're exempted from Burford anyway. So the court had to do that. It had to rule on them. But you are getting a federal—you got a federal forum for the federal facial constitutional claims. So then the only issue really is the as-applied challenges. Do they meet the Burford factors? Right. And on the as-applied factors, this is—separate from the reserves, this is garden variety misbehaviors, malfeasance. It's not—it's a 1983 straightforward set of facts, just in a different context. It's just literally—if a commissioner is subject to influence because the mayor wrote him or her or because they have a political allegiance to somebody else, that's a—even if they have a basis for what they've decided, that is bad faith. That is arbitrary. That's not permitted under the due process. And that's why the LUBA examination of witnesses and evidence and ex parte communications, that's all completely described and has been in process for 40 years because LUBA came into existence 10 years after the original land use. But why would these protections be in this land use system but not exist in this one, which is even more critical because the reserve— The answer is because Oregon made a different policy choice. So, I mean, I go back to your comment a minute ago about this is a garden variety case and just your standard 1983 case in a different context. But it turns out that the context matters a great deal because courts—federal courts across this country have said when we're dealing with land use stuff, federal courts take a very light touch because that is inherently state business. And I don't think your answer is addressing that point, which is the problem here. The Winnick case, Your Honor, is almost directly on point. This court, faced with the better statutory scheme, the better due process, said no Burford abstention. And actual rulings of this court historically, the vast majority are no Burford extension in land use cases. I would like to reserve— Well, I have a few more questions, and so maybe I'll give you a few more minutes. But, I mean, because you keep arguing on this political—that it was political. But even if the defendants' decisions—I guess I'll just follow up in a different way from Judge Flores. Even if the defendants' decisions were political, I'm just trying to see if you cite to any cases to show that political decision-making violates the Constitution or was arbitrary and capricious. And I don't really see that. And the Oregon Court of Appeals has, I think, rejected twice the political argument. The—I'm sorry, Your Honor. Yeah, so what is— The Del Monte case, the Squaw Valley case of this court. We didn't draft this complaint expecting that it would be a statement of facts for a Burford abstention. But if you look—and I'll send these cites to the court if you want. But there is a long history of agency decisions that were disqualified by this court because they had animus or some other subtext of agenda, even though those decisions were technically—could be defended on the factors and criteria. And when I say the long list, I mean the ones that come to mind are just Del Monte and Squaw Valley. And these were all cited to Judge Anna Brown. There never was a granted motion to dismiss against the merits of this case. The only dismissals were because it wasn't right because they asked us to wait, turns out, from 2012 to 2018 for these processes to complete. And when they completed, in the intervening time, the legislature, as I said, took Washington County completely out of it, and Clackamas County negotiated quid pro quos to change the entire scheme. All we're saying is this isn't some well-oiled, accomplished, and well-experienced scheme. That would have been the LUBA land use process. And the court has already addressed that to say even that doesn't require abstention. Even that doesn't. And so the Winnick case is a zoning and land use case. So there's not an unbroken string of Burford abstentions. It's exactly the opposite. There's virtually an unbroken string of not— Thank you. I'll give you a few minutes for rebuttal. Very good. You can sit at the table up here, sir. Good morning, Your Honors. May it please the Court. Roger Alfred of the Office of Metro Attorney. I'm appearing on behalf of Defendant Metro. I would like to—I don't have a ton of time, so I would like to make sure that I can respond to any questions that the Court has. I would first like to frame how Metro views this, and I think this has been reflected in some of the comments I've been hearing from the bench this morning. This is a case that is perfectly suited for Burford abstention. We have a situation where there are not one but two Oregon Court of Appeals opinions in Barkers I and in Barkers II that expressly reject challenges to the application of the state law factors by Metro and by Multnomah County. The Court upheld in both of those cases the application of those factors as it pertains to the plaintiff's property and to all of those Area 9b properties as well. So why is your opponent not correct that the Winnick case counsels that we should not abstain? I'm sorry, Your Honor, I can't quite hear you. Why isn't opposing counsel correct that the Winnick case instructs us that we should not abstain? A couple of reasons, Your Honor. First of all, Winnick involved basically a run-of-the-mill conditional use permit application, and that is the type of—and this goes to contradicting some of the arguments made by counsel— that is a classic quasi-judicial decision where an applicant goes to a local government and says, I have a proposal for development or something on my property, and then all of the quasi-judicial requirements apply, wherein there cannot be bias. You have to have an impartial decision-maker. Winnick—a couple of reasons. Also, I think it's important to note that the Court in Winnick did not completely reject Burford. The Court in Winnick did still abstain from hearing equitable claims. There was, I think, a request for specific performance in that case, that the Winnick Court said, yes, that's appropriate, that's an equitable claim, and that should be allowed to proceed— or that should be removed, I'm sorry. So I think there's an important distinction to be made, and this is pervasive, I think, in the arguments before you, which is there is a fundamental distinction between legislative land-use decision-making process and a quasi-judicial land-use decision-making process, because in a legislative land-use process, it is understood that those are political decisions. And I agree with you that I think the case law talks about that distinction, and it just makes common sense that there's a difference between those two things. So, I mean, at a very high level, Burford abstention is about federal courts not meddling into state public policy affairs. What about your as-applied procedural due process? I mean, not yours, but your opponent's procedural due process claim. I mean, federal courts, we are experts in procedure. That's what we do all the time. We can figure out whether this process meets the constitutional due process standard. It seems a little less removed from the specific state policy judgments in terms of assessing whether the procedure afforded is constitutionally sufficient. Why shouldn't we exercise jurisdiction over that claim? Over the procedural due process claim? Correct. The as-applied one. I'm sorry? The as-applied one. As-applied. Yes. Your Honor, this is addressed, I think, to a degree in the district court's opinion, even with respect to the facial claims. I think it's important to note that the amount of process that has occurred in these cases is exhaustive. I mean, these cases go back to 2010, and there have been countless opportunities for plaintiffs and for all of the other interested parties to appear before Multnomah County and be heard. And that certainly happened, to appear before Metro. But that's a decision on the merits, isn't it? Or is that the reason to abstain? I mean, don't we have a very preliminary question in the abstention question? Oh, I see, Your Honor. I'm sorry. I misunderstood the question. So with respect to abstention, I think it goes back to the idea that Burford abstention and abstention in general really reflects the idea that courts should not get involved in and meddle in those sort of local decisions. Let's put a finer point on it. We have three factors that, under the Ninth Circuit case law, we have to consider in determining whether we're allowed to abstain. And one of them is whether the claim is intertwined with state law, whether we'd have to decide complex issues of state law in order to decide the claim. So why is a plaintiff's as-applied procedural due process claim satisfy that factor under the Burford analysis? So, Your Honor, I think the procedural elements are very well addressed locally. I mean, I don't think there is any real problem with the way that these claims are heard. Well, that's a merits argument. The question is, then, why couldn't the district court decide the merits of the as-applied procedural due process claim? Or why was it okay for the district court to abstain? There's a strong presumption against abstention, so I'm just trying to figure out, as well, how do we abstain from the procedural due process here for the reasons that Judge Forrest said? Your Honor, I think for the reasons referenced by the district court in its opinion, I think it is appropriate. I think there is a significant state interest and local interest that was satisfied that, essentially, those claims were also very well handled at the local level. And I realize I'm talking about the merits a little bit, and I also realize I'm out of time. I'd like to ask you about the as-applied money damages claims, because our court in Martinez has said that the case law regarding abstention for Section 1983 money damages is ambiguous. And I think it was the Supreme Court in Quackenbush stated that fair assessment's holding is very limited because abstention is extraordinary, as I just mentioned. Can you explain why we should abstain from the money damages claims? Certainly, Your Honor. I think it's important to note that, and this is also referenced in the district court opinion, that Quackenbush did not rule out the possibility that there could be Burford abstention in situations where damage is applied. And the Quackenbush court specifically referenced the first assessment decision as an example of a situation where the Supreme Court did allow abstention in those circumstances. Can you cite any other case other than fair assessment as showing that we should abstain from these? Sure. I would cite the Amerson case, which is Amerson v. Iowa. That was the case that was also relied upon by the district court. That was a situation, and I think this is significant, the court expressly abstained from a situation where there were money damages at issue and recognized that they were doing that. I believe that was an Eighth Circuit decision, Your Honor. That was appealed or petitioned for review at the U.S. Supreme Court, and review was denied in that case. There's a section of Amerson, actually, that I wouldn't mind. I know I'm almost out of time. Well, actually, I think I am. Oh, that's my two minutes, not Mr. Gilmour's. Okay. There's a section of Amerson that I think is worth just mentioning, which is the court in that case did say, and this applies directly to the facts of this case, it would be inappropriate for a federal district court to address a claim that necessitates invalidating a state court judgment on a matter committed to the states in order to grant the relief sought. And this goes to the Chief Judge's question earlier. Basically, we have a situation where the Oregon Court of Appeals has twice issued opinions that have expressly rejected the claims brought by plaintiffs with respect to political influence. We now know from the briefing in this case that what plaintiffs are arguing, they're saying the heart of their case, the heart of their case, is that there was improper political influence. That is a decision that has been considered twice by the Oregon Court of Appeals and rejected both times. And so this is a situation where the plaintiffs are essentially coming to federal court now and asking for a decision that invalidates not one, but two previous judgments of an Oregon state court applying Oregon state law. Okay. And I don't know how, I know you're splitting the time with the county, but are you doing it by subject matter or just? We are doing it by, we just, I think we were going to kind of see how the argument goes, Your Honor. And so I don't think that, I'm not sure if Mr. Gilmour has specific issues that he was planning to address, but I would hope that he would also be able to respond to any questions that you raised that maybe I wasn't able to. Do you have anything else? I think I will cede whatever small amount of my time is left to Mr. Gilmour. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Chris Gilmour. I represent Defendant Multnomah County. I think as a starting point, I want to talk, and I believe Your Honors recognize this already, the character of the governmental action that's at issue in this case, because I think that dichotomy, which as Oregon lawyers, both Roger Alford and myself are very familiar with this concept between legislative and quasi-judicial, and I don't want you to get lost on that because it's not teased out as much in the Ninth Circuit. But if you do look at the Ninth Circuit about whether something's legislative or not, it will talk about the character of the government action. The size of the area that's affected is relevant, the number of people that are affected, and the broader that legislative act becomes, the lower your procedural rights are. And when it's legislative, you simply do not have the procedural rights that plaintiff is asserting in this case. I want to jump in there because this relates to our due process question. I think all of us are trying to figure out what do we do with the due process issue because that feels familiar to us in a way that the other issues being raised in this case do not. So you're right that the Ninth Circuit has made that distinction, and I believe that we have case law out there that says that when you're talking about land use issues and the decision affects more than one person, it's a broad sort of zoning or land use decision, that there is no process due. So I don't think there's been a whole lot of briefing on that or discussion of that, but if that's our case law, why wouldn't we just address the due process claim and just say that? It doesn't exist because we're in this sort of general land use context, not an individual decision, and there is no due process because we recognize this as more legislative. I'd like to answer that question in two parts, if I may, not to expand it too much, but I think there's two questions. One is, under Burford, is the adequacy of the court that's reviewing the issues that are presented, and that's separate from the procedural due process question. So if we're strictly looking at Burford, then what we're looking at is the adequacy of the court, and we look at whether the court is general jurisdiction or specific. So those courts that say it's not adequate, it goes to district court. You could go to multiple district courts. You could have inconsistent decisions. We don't have that. We have a single court of appeals. We have ORS. I don't mean to interrupt, but I think maybe you're missing the question, so I want to try and put a finer point on it. The second Burford factor, under Ninth Circuit case law, we're supposed to consider about whether abstention is permissible. We're supposed to look at the claim that's being made and figure out if it requires us to decide questions of state law. And then for the as-applied procedural due process claim in this case, what we're trying to figure out is, does deciding that as-applied procedural due process claim on the merits, would that actually require us to decide complicated issues of state law, or could we dispose of that claim on the merits without having to decide complicated questions of state law, such that abstention under Burford is actually not proper? Does that make sense? That's a very good question. I know exactly what you're saying. So I tend to agree with you on what your point is in the following way, is that if somehow the Burford abstention, because the way it's stated, talks about whether it's wrapped up in state law issues, and clearly the state process is super complicated and involves a large area and lots of agencies and IGA and ordinances, all that. If we're going to pull that apart and say, well, this was the negative, that this process fell short of due process, you're going to unravel a state process and you're going to have a lot of problems. To that extent, the Burford abstention absolutely makes sense. To your point, which I just don't disagree with you, I think the as-applied in this case actually doesn't require a different result because they don't have a property interest under the 14th Amendment, and you as a court in your discretion could decide on the merits that there is no separate 14th Amendment claim here and you could affirm on the merits rather than on the dismissal and avoid Burford altogether. And if that's your point, I agree with it. Let me ask you, I wanted to ask you about the as-applied equitable relief because in Burford the Supreme Court emphasized that the Texas State Court review was adequate because it could review the administrative decision de novo. Here, the Oregon Court of Appeals didn't conduct a de novo review and only reviewed for substantial evidence. Let me know if I'm wrong on that, but I think that's correct. No, you're correct, Your Honor. Okay. And it seems like the other argument that's being made by your friend across the aisle is that the review was inadequate. And I'm just, I wanted to make sure and ask you, why is the Oregon Court of Appeals review sufficiently adequate if it had a different level of review and a lesser one? So, again, that goes to the nature of the decision that's before the Court of Appeals being legislative, going through the Land Conservation and Development Commission who both sets the policy that's applied in this case and reviews that policy to make sure that it is consistent with the factors. Then that goes to the Court of Appeals, which specifically addressed constitutional substantial evidence and is deferential to LCDC with regard to their review. And do you have any case showing that de novo review is not required? Is de novo review is not what? Is not required. Do you have any cases that state that de novo review is not required? Your Honor, if I can try to find it real quickly. In my brief on page 19, there's some discussion about legislative cases, and I think one of them is on point with your question. Judicial review of an agency decision is often limited to the administrative record. That's First National Bank 63 F3rd 894. Every territory hearings are not required by due process when administrative agencies include written submissions. That's Clause SB 42 F3rd 1522. That's 19 to 20 of my brief. And so I think that answers your question. I'll take a look at that. And then one last question, because I know you're over time, but I think we have previously found no disruption to coherent policy where the question presented is really highly factual and the suit was not a challenge to the entire regulatory system. And it seems here that the appellants are arguing that maybe if we just look at their 76, I think it was 76 acres involved, that that would not be disruptive of the entire state system. If we limit our review to that. And I just wanted to give you an opportunity to respond to that point. Thank you, Your Honor. So ER record page 40 talks about, and this is cited also in the district court's opinion, that 75 acres is part of 2,500 acres. And if I may, the reserve decision itself is for the entire metro area. And so to assure compliance with the factors, it's not just one particular area. It's the combined area to preserve agricultural areas that are required to protect and to provide expansion based on population growth for the entire area. That is why Metro Clackamas, Washington County, and Multnomah County are all required to sign an agreement, and that all is submitted through the Land Conservation and Development Commission. And if you look at Barker's, it specifically talks about they're not required in evaluating the factors to consider individual properties or areas. They're supposed to look at the factors as a whole. So that idea that it's limited to just their property doesn't apply. Can I follow up on that? So there's the sort of the whole area, the whole metro area. But even if we go narrower than that, this particular property at issue is within Area 9B. So would it even be possible to render a decision about this particular property that wouldn't necessarily be a decision about 9B generally? No, and I think that's a really good point. It would have to go back and be considered in terms of how it impacts everything else. So, for example, if you were to decide for whatever reason that the procedural process was inadequate, it would go back, and it would have to be reconsidered in that light rather than damages be provided as a remedy. And if I understood what happened when the Court of Appeals required reconsideration of a different section, I think it was 9C possibly, another 9, that then cascaded a domino effect where other parcels had to then also be reconsidered because it's all supposed to be considered under the totality. Am I understanding what the effect of reconsideration on one parcel is? Yes, that's consistent with how I understand it as well. Thank you. Thank you, Your Honor. Thank you, Mr. Gilmour. Mr. James, I'll give you a couple minutes. I know you went beyond your time. We took you beyond your time, but I'll give you two minutes for rebuttal. Well, thank you, Your Honor. Ironically, what played out on February 25th is exactly what's playing out right now. Ted Wheeler, now the mayor of Portland, Dave Bragdon, now in charge of New York City's entire planning commission, said to the other counselors, you can't do this. You cannot do this. You can't abandon the factors. It's going to be reviewed. They made that comment. It's going to be reviewed for your adherence to the factors. Well, it wasn't reviewed for that. The actual ordinance was rewritten. The findings would have caused a question at least by any Court of Appeals. They were eliminated completely. The Court of Appeals review is limited to what the findings are, not the record down below, not what happened in that proceeding, just what's reported as the outcome. And what was reported was altered. So I come back to this. It isn't innocent. It's not inadvertent. It's not proper administrative process. And the federal courts are the only courts that have ever stopped this. That's why all the litigants with constitutional claims come to the federal courts. You have to stop. I don't mean you, obviously. I mean the courts have to enforce the Constitution. So those counselors on that day might as well have been sitting where I was, and the three other counselors, in voting as they did, were changing their votes. And it's not about the political. They could have done it because, for any reason, it's just abandoning or walking away from the factors. We just said, because it's Rule 12, we're going to be tested for summary judgment. We're going to be tested for motions to dismiss. We had to plead enough facts so on the face of the complaint you could see what we were saying. And we did. We quoted the counselors. We quoted one of the counselors who voted in favor of the new ordinance, saying had 700 e-mails and texts, from whom there was a two-year public process for input. Who says that after that process is concluded, you can come back in through another door and just write robo things? Seven hundred e-mails, were they all from the same person? Is that person a resident of the state of Oregon? Are they involved in the Tri-County process? That's why the LUBA process, due process, says you have the right to get evidence, you have the right to ask witnesses and they have to be under oath. You have the right to subpoena. That's due process. And that only sits there to protect against the very vice we're talking about here, unmoored, this idea that we're just rulemaking, unmoored from any constitutional restrictions. Are you kidding me? There isn't a case you can cite. And I don't mean to sound flippant. I just mean there are no cases that say that's true. There are no cases that say we can infringe the Constitution as long as we do it with legislation. There are no cases that say that. Your concluding statement, sir. I'm sorry. Your concluding statement. My concluding statement is the only place for the proper adjudication of constitutional issues is a federal court. The Burford abstention here does not apply to the as-applied due process claims. It does not apply to the as-applied equal protection claims. And the Winnick case, the Winnick case just stands in opposition to everything they've said. Thank you. Thank you. Very good. Thank you. The case of Catherine Blumacron versus Multnomah County is now submitted.
judges: MURGUIA, FORREST, SUNG